***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer, and the briefs and arguments on appeal. Based upon the entire record of evidence, the appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence, Full Commission reverses the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 10 January 2000 as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed between Wanda J. Hooker and Stokes-Reynolds Memorial Hospital/N.C. Baptist Hospitals, Inc. on or about December 2, 1998.
3. Stokes-Reynolds Memorial Hospital/N.C. Baptist Hospitals was self-insured for workers compensation coverage at all times relevant to this claim.
4. Plaintiff-employee was employed as a CNA prior to and at the time of the alleged injury on December 2, 1998.
5. Plaintiff-employee's average weekly wage during all times relevant to this claim was $242.56, yielding a compensation rate of $161.57.
6. Plaintiff has been out of work under medical care during the dates of December 4, 1998 February 19, 1999 and April 28, 1999 through the present. Between February 20, 1999 and April 29, 1999, she worked limited hours.
7. Plaintiff received follow-up treatment from Rodolfo F. Flores, M.D., Stokes Medical Center, Occupational Health, Steven S. Glazier, M.D., WFU Department of Neurosurgery, and John T. Hayes, M.D.
8. The parties submitted as Stipulated Exhibit 1 records from the following providers: (a) Rudolfo F. Flores, M.D.; (b) Stokes Reynolds Memorial Hospital, Inc. (x-ray report); (c) North Carolina Baptist Hospitals, Inc. (x-ray reports); (d) Occupational Health Systems; (e) Steven S. Glazier, M.D., WFU Dept. of Neurosurgery; (f) Stokes Medical Center Park/Stokes Memorial Hospital (PT); (g) John T. Hayes, M.D., P.A.; (h) Novant Health (surgery); (i) Paul G. Sutej, M.D.; (j) Robert Teasdall, M.D.; (k) Leon J. Grobler, M.D.
9. The parties submitted as Stipulated Exhibit 2 records from the following providers, which were bound in a black notebook: (a) Rodolfo Flores, M.D.; (b) Paul Sutej, M.D.; (c) Rehability Functional Capacity Evaluations; (d) Stokes Reynolds Memorial Hospital; (e) John T. Hayes, M.D.; (f) Novant Health Triad Region; (g) Westfield Medical Center.
10. The issues to be decided by the Commission are:
 (a) Whether plaintiff-employee sustained an injury by accident or sudden traumatic incident on December 2, 1998, compensable pursuant to N.C. Gen. Stat. § 97-2(6) et seq.?
 (b) Whether Plaintiff-employee's current disability is causally related to any incident that occurred on December 2, 1998?
 (c) If Plaintiff-employee did suffer an injury by accident, is said claim barred by the doctrine set forth in Johnson v. High Point Regional Hospital, IC File No. 013804 (a decision by the Full Commission)?
 (d) If Plaintiff-employee suffered an injury by accident, which is not barred by the Johnson doctrine, what benefits, if any, is Plaintiff-employee entitled to receive?
 ***********
Based upon the entire record of evidence the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was born on July 13, 1935. She obtained her G.E.D. in 1994. She has an extensive and varied work history. Most recently, plaintiff had been a truck driver.
2. Plaintiff completed training as a certified nursing assistant at Surry Community College in 1996. She began working for defendant-employer as a CNA in September 1996, and worked as a CNA for about two and a half years.
3. Plaintiff suffered a previous injury on 15 May 1995 when she slipped and fell out of her truck, injuring her back and right ankle. Plaintiff's ankle was placed in a cast and plaintiff's back was treated conservatively. Plaintiff received a 10% rating to her right ankle and a 5% rating to her back as a result of the 15 May 1995 fall. That matter was settled by way of a compromise settlement agreement.
4. In September 1996, Plaintiff applied for a position as a CNA with Defendant. She was interviewed by Karen Lawrence, who was responsible for the acute care unit and would be plaintiff's supervisor. Ms. Lawrence asked Plaintiff if she had any prior injuries or any restrictions that would interfere with her performing the duties of a nursing assistant. Plaintiff told Ms. Lawrence about plaintiff's fall as a truck driver.
5. On 2 December 1998, plaintiff was moving a patient from a bed to a chair with a coworker when the patient began to fall. Plaintiff jerked up on the patient and felt a burning pain in her low back on the right side.
6. Plaintiff immediately reported the incident to Ms. Lewis, the nurse in charge. On 3 December 1998 plaintiff filed an incident report.
7. The next day Plaintiff went to see Dr. Flores. He ordered a CT scan, which was done on 17 December 1998. This test showed marked osteoarthritis of the lumbosacral spine and a disc bulge at L4-5.
8. An MRI without contrast was then done on 29 December 1998. This MRI confirmed the disc bulge at L4-5, and showed a bulge at L5-S1. Dr. Flores took plaintiff out of work and treated her conservatively for several weeks. In January 1999, he referred her to Dr. Glazier, the neurosurgeon who had treated her back before.
9. Dr. Glazier ordered an MRI with contrast, which was done at Baptist Hospital on January 12, 1999. The MRI, which was read by Dr. Peter Ricci, showed disc bulges at L4-5 and L5-S1, as well as indications of an annular tear. Dr. Glazier prescribed physical therapy and released her to return to work 4 hours a day at light duty with no lifting as of 10 February 1999.
10. Plaintiff returned to work for defendant-employer on a part-time basis on 19 February 1999.
11. On 27 April 1999, plaintiff on her own sought treatment from Dr. John T. Hayes, an orthopedic surgeon. Dr. Hayes reviewed the two MRIs and found what he considered to be indications of spinal stenosis (both foraminal and canal) and arthritic changes. Dr. Hayes wrote plaintiff out of work at that time.
12. Dr. Hayes was of the opinion that plaintiff needed surgery. On 24 May 1999, Dr. Hayes performed a decompression and laminectomy with foraminotomy at L4-5. On 17 August 1999, Dr. Hayes released Plaintiff to return to work with restrictions of lifting up to 10 pounds regularly and 25 pounds occasionally. He placed no restrictions on sitting or standing. On 31 August 1999, Dr. Hayes assessed plaintiff with a 12.5% permanent impairment of her back and released her to return to work with restrictions of no lifting over 10 pounds and no lifting from the floor. He testified that this rating included and was not in addition to the previously assessed 5% permanent impairment rating.
13. Dr. Hayes testified that plaintiff's 2 December 1998 injury resulted in a bulging disc at L4-5 that exacerbated plaintiff's preexisting spinal stenosis to such a degree that it significantly compressed the S1 nerve root. Dr. Hayes testified that plaintiff's diagnostic studies supported this conclusion, as did Dr. Hayes' own surgical findings, which showed tissue indicative of recent trauma compatible with the 2 December 1998 incident.
14. Dr. Hayes further testified that plaintiff would not have been free from symptoms, as she was from June 1997 through December 1998 if the nerve root had been swollen by compression prior to the 2 December 1998 lifting incident.
15. Dr. Hayes is the only physician who testified in this matter.
16. Plaintiff experienced an additional 7% permanent partial disability rating to her back as a result of the 2 December 1998 specific traumatic incident.
17. Following her release to return to work by Dr. Hayes, plaintiff applied for and received unemployment benefits beginning 22 August 1999.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 2 December 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to compensation for her total disability at the rate of $161.57 per week for the period from 3 December 1998 up through and including 18 February 1999. On 19 February 1999 plaintiff returned to work with defendant-employer on a part-time basis. Subject to a credit for the unemployment benefits paid plaintiff, plaintiff is again entitled to compensation for her total disability from 27 April 1999 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29.
3. For the period from 19 February 1999 up through and including 26 April 1999, plaintiff was temporarily partially disabled as a result of the compensable specific traumatic incident and is entitled to receive two-thirds of the difference between her pre-injury wage and the wages plaintiff earned working part-time. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to have defendant pay for all medical treatment related to the 2 December 1998 injury reasonably necessary to effect a cure or give relief. N.C. Gen. Stat. § 97-25.
5. Defendant is entitled to a credit for the unemployment benefits paid plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff compensation for her total disability at the rate of $161.57 per week for the period from 3 December 1998 up through and including 18 February 1999, and, subject to the credit for the unemployment benefits paid plaintiff, defendant shall pay plaintiff for her total disability at the rate of $161.57 per week for the period from 27 April 1999 and continuing until she returns to work or further order of the Commission. To the extent this amount has accrued, it shall be paid in a lump sum.
2. Defendant shall pay plaintiff temporary partial disability benefits at a rate of two-thirds of the difference between her pre-injury wage and the wages plaintiff earned working part-time for the period from 19 February 1999 up through and including 26 April 1999. To the extent this amount has accrued, it shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the lump-sum compensation due plaintiff under paragraphs 1 and 2 of this AWARD shall be paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Defendant shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER